UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHRISTOPHER A. SCHREINER, MICHAEL A. SCHREINER, and MARK CORTINO, <br><br> Plaintiffs, <br><br> v. <br><br> U.S. SMOKELESS TOBACCO CO., ALTRIA GROUP, INC., and LESLIE WARD, <br><br> Defendants. | No. 17 C 7530 <br><br> Judge Sara L. Ellis |

## OPINION AND ORDER

After U.S. Smokeless Tobacco Co. ("USST") terminated Plaintiffs Christopher A. Schreiner, Michael A. Schreiner, and Mark Cortino from their jobs at USST's factory, Plaintiffs filed this case against USST, Altria Group, Inc. ("Altria"), and Leslie Ward. The Court dismissed Plaintiffs' first amended complaint without prejudice, concluding that § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, preempts Plaintiffs' claims for breach of contract, defamation, and intentional infliction of emotional distress ("IIED") because they require interpretation of the collective bargaining agreement between USST and Plaintiff's union. Plaintiffs then filed a first amended complaint ("FAC"), making only minor changes to the complaint and realleging the same claims. Defendants USST and Ward (collectively, "Defendants") have moved to dismiss the FAC pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] Because the Court again finds § 301 preempts the claims and Plaintiffs have not sufficiently alleged a § 301 claim, the Court dismisses the FAC with prejudice.

---

[1] Plaintiffs have not yet served Altria. Because USST and Ward's arguments for dismissal apply equally to Altria, the Court extends them to Altria because Plaintiffs had the opportunity to respond to them. *See Malak v. Associated Physicians, Inc.*, 784 F.2d 277, 280 (7th Cir. 1986) (court may *sua sponte* enter

**BACKGROUND**[2]

Altria produces and markets tobacco, cigarettes, and other related products. It acquired USST, a smokeless tobacco manufacturer, in January 2009. On October 27, 2016, Altria announced that it would close two of its manufacturing facilities by 2018. The closings included the factory in Franklin Park, Illinois, which employed approximately 300 individuals. Following the announcement of the Franklin Park factory closure, USST installed additional security cameras in the factory.

Plaintiffs all worked at USST's Franklin Park factory. The Schreiners had worked there as production mechanics since May 24, 2013. Cortino worked there since January 7, 2015. Plaintiffs worked the third shift. They are parties to a collective bargaining agreement between SEIU Local #1 (the "Union") and USST (the "CBA").[3] The CBA sets forth certain rights and responsibilities of USST and its employees, provides USST with management rights, and requires the parties to pursue a specified process for any grievances that arise between them.

---

judgment in favor of additional non-moving defendants if motion by one defendant is equally effective in barring claim against other defendants and plaintiff had adequate opportunity to respond to the motion); *Roberts v. Cendant Mortg. Corp.*, No. 1:11-CV-01438-JMS, 2013 WL 2467996, at *5 (S.D. Ind. June 7, 2013) (although three defendants had not entered appearances and it was not clear if they had been served, court could impute arguments made by other defendant to all of them and dismiss claims against all defendants).

[2] The facts in the background section are taken from the FAC and are presumed true for the purpose of resolving Defendants' motion to dismiss. *See Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011); *Local 15, Int'l Bhd. of Elec. Workers, AFL-CIO v. Exelon Corp.*, 495 F.3d 779, 782 (7th Cir. 2007). A court normally cannot consider extrinsic evidence without converting a motion to dismiss into one for summary judgment. *Hecker v. Deere & Co.*, 556 F.3d 575, 582–83 (7th Cir. 2009). Where a document is referenced in the complaint and central to Plaintiffs' claims, however, the Court may consider it in ruling on the motion to dismiss. *Id.* Although the Court presumes familiarity with the factual background set forth in its June 12, 2018, Opinion, Doc. 33, the Court recounts the allegations again here, including any additional allegations from the FAC.

[3] The Court considers the CBA, effective between the parties as of 2015, which Plaintiffs explicitly reference in the FAC and is central to their claims.

On January 27, 2017, a production supervisor informed employees at the Franklin Park factory that something had gone wrong with the video jets. Later that day, around 11:00 p.m., Food and Drug Administration ("FDA") representatives called Plaintiffs for individual questioning. Ward, USST's manager of employee relations at the Franklin Park factory, the head of maintenance, and Charles B., a union steward, also attended the interview, which focused on Plaintiffs' whereabouts on December 21, 2016. Plaintiffs learned that the investigation extended beyond the video jets, but they did not receive additional specific information.

On January 30, 2017, at approximately 6:30 a.m., Michelle Allen called a plantwide meeting to discuss non-product related material ("NPRM") found in product produced at the Franklin Park plant. Several days later, on February 2, Plaintiffs' supervisor Eddie told Plaintiffs to sit in the public cafeteria between 7:00 a.m. and 10:45 a.m. to await further questioning. While Plaintiffs waited, other employees gave Plaintiffs looks of disgust and teased them. One employee referred to the table where Plaintiffs sat as the "criminal table." Doc. 40 ¶ 39. Eventually, Plaintiffs moved to a smaller cafeteria as they waited for their interviews. During individual questioning, Plaintiffs learned they each were accused of criminal activity regarding the NPRM. That same day, Allen held another plantwide meeting, announcing that USST was placing previously promised severance payments on hold until it resolved the NPRM issue. Allen also asked employees to come forward with information about any suspicious activity. Later that day, Ward and Dave Rogan individually advised Plaintiffs they were among four people of interest in the NPRM matter and that USST was suspending them without pay until further notice. Plaintiffs also received letters from USST, which Ward signed, to the same

effect. Security then escorted Plaintiffs out of the building without letting them gather their personal belongings, including tools they would need for future employment.

On February 13, Ward called Plaintiffs and told them to appear for a meeting on February 14 at 11:00 a.m. She indicated attendance was voluntary and that they could gather their belongings afterward. Plaintiffs then contacted their Union and requested representation at the meeting. Although union representatives appeared on Plaintiffs' behalf, USST did not allow them to attend the interview, taking the position that the matter had become a criminal one. During these meetings, Plaintiffs learned that USST drilled out the locks from Plaintiffs' toolboxes and searched their contents without having a union representative present. The Schreiners also received subpoenas for fingerprints from federal agents, complying on February 16.

On February 28, at approximately 7:30 a.m., a SWAT team forced entry into Cortino's house, zip-tying Mark and his children's hands behind their backs for approximately forty-five minutes. Eventually, Mark and his family left the house. The SWAT team searched the house for five hours, causing approximately $11,000 in damage. On March 1, a representative of the FDA, Mike Bush, went to the Schreiners' mother's house and advised her to talk sense into her children because he would "hate for 'something terrible to happen if this was not resolved.'" *Id.* ¶ 78.

On May 15, Plaintiffs received letters from USST indicating that USST had terminated their employment effective immediately. The letters also stated that Plaintiffs would not receive severance benefits or back wages for the period of their suspension. While suspended, Christopher sought but did not receive a job at Peacock Foods Greencore USA. USST told the hiring manager at Peacock Foods that Christopher was a primary suspect in the NPRM situation.

4

Despite Plaintiffs having filed grievances pursuant to the CBA's grievance procedure, the Union did not pursue them. Plaintiffs received letters from the Union on March 9, 2018, notifying them that the Grievance Merit Board had determined the grievances lacked merit to be successfully pursued through arbitration and so the Union would not take any further action on their behalf.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## ANALYSIS

**I.  Section 301 Preemption**

Section 301 of the LMRA preempts "claims founded directly on rights created by collective-bargaining agreements, and also claims 'substantially dependent on analysis of a collective-bargaining agreement.'" *Caterpillar Inc. v. Williams*, 482 U.S. 386, 394, 107 S. Ct. 2425, 96 L. Ed. 2d 318 (1987) (quoting *Elec. Workers v. Hechler*, 481 U.S. 851, 859 n.3, 107 S.

Ct. 2161, 95 L. Ed. 2d 791 (1987)). "If the resolution of a state law claim depends on the meaning of, or requires interpretation of, a collective bargaining agreement, the application of state law is preempted and federal labor law principles must be employed to resolve the dispute." *Atchley v. Heritage Cable Vision Assocs.*, 101 F.3d 495, 499 (7th Cir. 1996). In previously considering the same claims Plaintiffs raise here, the Court concluded that § 301 preempted all their claims. Doc. 33 at 5–8. Specifically, the Court found that § 301 clearly preempted Plaintiffs' breach of contract claim, which alleged that USST breached the CBA by, among other things, terminating Plaintiffs without cause, failing to perform a proper investigation, refusing to allow a union representative to attend the meetings held on February 14, 2017, and drilling out the locks on Plaintiffs' toolboxes without a union representative present. *See id.* at 6. Further, the Court found Plaintiffs' IIED claim required interpretation of the CBA, where it arose from allegedly extreme and outrageous conduct Defendants undertook in connection with the investigation into the NPRM, including, presumably, the denial of union representation during questioning, the drilling of their toolboxes without union representatives present, their termination, and other actions undertaken during the course of the investigation. *Id.* at 6–7. Finally, the Court concluded that § 301 preempted the defamation claim because the Court would have to examine the CBA's management rights provision to assess the extent to which Defendants' allegedly defamatory statements were privileged or truthful. *Id.* at 7–8.

The allegations underlying Plaintiffs' claims have not substantively changed in the FAC. Plaintiffs' only attempt to avoid preemption in the FAC is the inclusion of legal conclusions that the CBA does not address tortious acts against employees and does not cover defamation claims. The Court need not consider these legal conclusions when considering the viability of Plaintiffs' claims, particularly where they are not supported by factual allegations. *See Iqbal*, 556 U.S. at

678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."). Moreover, these allegations run counter to the caselaw the Court previously cited in finding that Plaintiffs' defamation allegations are inextricably intertwined with the CBA, and Plaintiffs have not provided the Court with reason to revisit its prior determination. *See* Doc. 33 at 8 (citing *Estes v. Beta Steel Corp.*, No. 2:06-CV-221, 2006 WL 3542731, at *6 (N.D. Ind. Nov. 7, 2006); *Peffley v. Durakool, Inc.*, 669 F. Supp. 1453, 1462 (N.D. Ind. 1987); and *Mock v. T.G. & Y. Stores Co.*, 971 F.2d 522, 529–30 (10th Cir. 1992)). The Court therefore adopts the preemption analysis from its June 12, 2018, Opinion and again finds that § 301 of the LMRA preempts all of Plaintiffs' claims. *See* Doc. 33 at 5–8.

## II.    Treatment of Preempted Claims

Although the Court has found Plaintiffs' claims preempted, the question again arises as to the appropriate remedy. The Supreme Court has indicated that a preempted state law claim "must either be treated as a § 301 claim, or dismissed as pre-empted by federal labor-contract law." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220, 105 S. Ct. 1904, 85 L. Ed. 2d 206 (1985). The Court previously dismissed Plaintiffs' claims without prejudice as preempted by § 301 of the LMRA in order to allow Plaintiffs the opportunity to consider how best to proceed on their claims in light of the Court's preemption findings and because it appeared that some form of grievance proceeding was underway. Doc. 33 at 9–10. Despite the opportunity to replead their claims as § 301 claims, Plaintiffs filed the FAC in substantially the same form as their initial complaint. This suggests to the Court that dismissal with prejudice is the appropriate remedy here because Plaintiffs have not cured the identified defects.[4] *See Douglas v. Univ. of Chicago*, 619 F. App'x 556, 557 (7th Cir. 2015) (affirming dismissal of case with prejudice

---

[4] Plaintiffs appear to argue that the Court should at least remand the defamation and IIED claims to state court because these are state law supplemental claims. But this ignores the fact that the Court has found all three claims, including the defamation and IIED claims, preempted by federal law.

where the "amended complaint merely rehashed the contents of his brief opposing [the original] motion to dismiss" and "did not fix any of the flaws in the original complaint").

The Court would reach the same outcome treating Plaintiffs' claims as § 301 claims. To proceed under § 301, Plaintiffs must allege both that the Union violated its duty of fair representation and that USST breached the CBA. *See Yeftich v. Navistar, Inc.*, 722 F.3d 911, 914 (7th Cir. 2013) ("When union members sue their employer for breach of contract under section 301 of the LMRA, they must also state a prerequisite claim of breach of their union's duty of fair representation."). A plaintiff must include allegations concerning the duty of fair representation and the breach of contract applies regardless of whether he pursues both the union and the employer or just one or the other. *See DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 163–65, 103 S. Ct. 2281, 76 L. Ed. 2d 476 (1983) ("[T]he two claims are inextricably interdependent. . . . The employee may, if he chooses, sue one defendant and not the other; but the case he must prove is the same whether he sues one, the other, or both.").

Here, Plaintiffs have wholly failed to include any allegations to suggest that the Union breached its duty of fair representation. A union breaches this duty only when its "conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." *Vaca v. Sipes*, 386 U.S. 171, 190, 87 S. Ct. 903, 17 L. Ed. 2d 842 (1967). Plaintiffs allege that, after hearing all the evidence and arguments on Plaintiffs' grievance, the Union's Grievance Merit Board determined that the grievance lacked merit to be pursued successfully through arbitration. But "declining to pursue a grievance as far as a union member might like isn't by itself a violation of the duty of fair representation." *Yeftich*, 722 F.3d at 916. This is all Plaintiffs have alleged, however, failing to include even conclusory allegations of bad faith,

8

discrimination, or arbitrariness.[5] Therefore, they have failed to state a claim for breach of the duty of fair representation and so cannot proceed on any § 301 claim. And because the Court already provided Plaintiffs with one opportunity to remedy their pleadings and the FAC and Plaintiffs' response to the present motion to dismiss did not address any of the deficiencies identified in the Court's prior Opinion, the Court dismisses Plaintiffs' claims with prejudice. *See Douglas*, 619 F. App'x at 557.

## CONCLUSION

For the foregoing reasons, the Court grants Defendants' motion to dismiss [47]. The Court dismisses the first amended complaint with prejudice.

Dated: April 1, 2019

_____
SARA L. ELLIS
United States District Judge

---

[5] In their response, Plaintiffs focus on certain actions that USST and Ward allegedly took to deny them union representation, claiming these actions were discriminatory. But to allege a breach of the duty of fair representation, Plaintiffs needed to focus on the actions of the Union, not of their employer.